# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 10-0125-WS |
| ) | |
| LLOYD KENNEDY MAY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on defendant's Motion to Suppress (doc. 21). The Motion is now ripe for disposition, inasmuch as the Government has filed a response and the allotted time for defendant to submit a reply has expired.[1]

**I.     Background.**

On May 27, 2010, a grand jury returned a four-count Indictment (doc. 16) charging defendant, Lloyd Kennedy May, with possessing with intent to distribute marijuana and cocaine on certain specific occasions, in violation of 21 U.S.C. § 841(a)(1), and with possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). This matter is set for jury selection on August 2, 2010.

May now seeks to suppress evidence that law enforcement officers seized from his home (the "search location") in the early morning hours of March 19, 2010. Prior to the search of May's residence, Mobile County Sheriff's Deputy Johnny R. Thornton prepared a search affidavit setting forth the following salient factual averments: (i) within the past 72 hours a reliable confidential informant ("CI #1") reported that May was involved in cocaine distribution activities; (ii) a second reliable confidential informant ("CI #2") corroborated that tip, and further reported that May was also involved in distribution of high-grade marijuana; (iii) during that

---

[1]     Also pending is a Motion to Strike (doc. 25), through which the Government seeks to substitute a more complete Amended Response (doc. 26) for its initially filed Response (doc. 23). The Motion to Strike is granted, and the Government's partial Response (doc. 23) filed on June 30, 2010 is **stricken**. In the absence of any possible prejudice to defendant, the Court will consider the Government's Amended Response (which was filed well in advance of defendant's reply deadline) in lieu of its predecessor.

same 72-hour window, CI #1 attempted to perform a controlled buy from May, at which time he observed May to be in possession of what appeared to be an ounce of cocaine and May quoted CI #1 a price of $1,000 per ounce; (iv) after May's meeting with CI #1, law enforcement officers followed May to the search location and conducted surveillance activities wherein they observed May repeatedly leave the search location, drive to various residences, and then depart after a short time; (v) during that surveillance period, May informed CI #1 that he did not have "the whole amount" of cocaine that CI #1 wanted but that May "did have some," after which May returned to the search location; (vi) when May next left the search location, officers stopped him for a traffic violation and requested assistance from a canine unit when May withheld consent to search his vehicle; (vii) May then fled the scene, triggering a high-speed pursuit that culminated in his arrest; and (viii) incident to May's arrest, officers found marijuana, scales, sandwich bags, a handgun, and mail in May's name listing the search location address (all apparently found in his vehicle), as well as more than $1,000 in currency on his person.

On the strength of these and other averments in the search affidavit, a Mobile County District Judge issued a search warrant for May's home at 1:32 a.m. on March 19, 2010. The warrant authorized a nighttime search of that address for illegal drugs, drug paraphernalia, documents and records relating to the drug trade, and weapons. The residence was searched just 12 minutes later, resulting in seizure of numerous items, including controlled substances, digital scales and other drug paraphernalia, ballistic vests, and ammunition.

## II. The Motion to Suppress.

May now seeks suppression of the fruits of the March 19 search on a host of theories, including the following: (i) the search warrant was overly broad; (ii) the nighttime "no knock" search violated May's rights; (iii) the search affidavit inaccurately suggests that items to be seized were observed at the residence; (iv) the affidavit's statement that CI #2 had confirmed CI #1's tip is inaccurate; (v) there was no probable cause to believe that cocaine or other evidence would be found at May's home; (vi) there was insufficient proof of the informant's veracity and basis of knowledge; and (vii) the affiant's information was not sufficiently timely to establish probable cause. All of defendant's arguments are presented in conclusory, barebones fashion,

with some appearing in the Motion to Suppress itself and others surfacing for the first time in the supporting Brief. Nonetheless, the Court will address each of them.[2]

May theorizes that the search warrant was overly broad because it authorized officers to search for weapons and drug manufacturing materials despite a lack of probable cause to believe that those items would be found at the search location. This contention fails for at least three independent reasons. First, the Court disagrees with May's legal premise that probable cause to search for weapons and drug manufacturing materials cannot be gleaned from a search affidavit documenting drug distribution activities. There is a well-established, symbiotic relationship between controlled substances distribution and weapons. *See, e.g., United States v. Alvarez*, 755 F.2d 830, 849 (11th Cir. 1985) ("Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotic equipment."). Also, it is common knowledge that drug dealers frequently "cook" powder cocaine into crack cocaine (a manufacturing activity). As such, evidence that May was trafficking in powder cocaine can give rise to probable cause to search for weapons and drug manufacturing evidence. Second, even assuming that there was no probable cause to search for those items, if (as the Court finds below) there was probable cause to search May's residence for controlled substances, then the plain view doctrine would allow officers to seize other incriminating evidence (*i.e.*, weapons, drug manufacturing materials) encountered in that search. *See, e.g., United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) ("An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to

---

[2] The Court expressly finds that no evidentiary hearing is warranted. Defendant has not requested a hearing on his Motion to Suppress. Even if he had, the Court would take this Motion under submission without a hearing. To the extent that May is challenging the warrant's probable cause determination, his Motion turns on questions of law as to which no hearing is required. *See United States v. Horne*, 2006 WL 2668919, *5 (11th Cir. Sept. 18, 2006) (no evidentiary hearing necessary on motion to suppress that presented issues of law concerning whether there was probable cause for search warrant). With respect to the other stated grounds in the Motion, defendant has not alleged any facts that, if proved, would require the grant of relief; therefore, no hearing is needed. *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) ("Where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion.").

search a given area for specified objects, and in the course of the search come across some other article of incriminating character.") (citations omitted). Third, even if May were correct that the search warrant was overly broad, exclusion of the items seized would remain inappropriate pursuant to the *Leon* good faith doctrine, as further explained below. *See United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000) ("The good faith exception may be applied to a search conducted pursuant to an overly broad warrant.").

Next, May suggests, without elaboration, that suppression of evidence seized on March 19 is appropriate because the officers executed the warrant without knocking and announcing their presence first. Law enforcement officers executing a search warrant at a residence generally must give notice of their authority and provide the occupant a reasonable opportunity to respond before entering. But the "knock and announce" protocol is not universally mandated in the execution of all search warrants. To the contrary, it has several recognized exceptions, such as "when an announcement by officers would be futile, as may occur when the circumstances indicate that the inhabitants are well aware of the officers' presence." *United States v. Acosta*, 502 F.3d 54, 59 (2nd Cir. 2007); *see also Hudson v. Michigan*, 547 U.S. 586, 589-90, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (recognizing "the many situations in which it is not necessary to knock and announce," such as "if knocking and announcing would be futile"). This is precisely the case here. May was already in custody when officers arrived at his home to execute the search warrant. The residence's other occupants (a woman and two children) were standing outside when the search warrant team arrived, and the woman had advised officers that no one else was in the house. Under those circumstances (none of which May has contested), for the officers to "knock and announce" before going inside an unoccupied house would have been a hollow, futile, and utterly pointless exercise. Besides, even if the officers were obliged to knock and announce here, that finding would not aid May because the Supreme Court has declared that the exclusionary rule does not apply to knock-and-announce violations. *See Hudson*, 547 U.S. at 599 (because "the social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial … [r]esort to the massive remedy of suppressing evidence of guilt is unjustified"); *see also United States v. Farias-Gonzalez*, 556 F.3d 1181, 1187 (11th Cir. 2009) ("[t]he *Hudson* Court held that the use of the exclusionary rule

for knock-and-announce violations was unjustified"). Thus, as a matter of law, defendant cannot parlay any violation of the knock-and-announce requirement into suppression of evidence.

Defendant's third stated basis for seeking suppression is that Deputy Thornton's search affidavit incorrectly suggested "that the items to be seized were observed located at the residence to be searched." (Doc. 21, at 2.) The Court has carefully reviewed the search affidavit and finds no indication that Deputy Thornton made any misleading representations in this respect. Nowhere does the search affidavit assert, suggest, or insinuate that officers or confidential informants had actually observed drugs, paraphernalia, or weapons at the search location. Because this underdeveloped objection appears to be grounded on a mistaken reading of the search affidavit, May is not entitled to suppression of evidence on this ground.

The same conclusion applies to May's next objection, wherein he asserts, without explanation, that the search affidavit incorrectly states that CI #2 verified information supplied by CI #1. According to the Motion to Suppress, unspecified testimony at May's preliminary hearing undermines the search affidavit's statement that CI #2 provided any such verification. Defendant does not describe the testimony on which he relies for this purported contradiction, leaving this Court and the Government in the dark. More importantly, defendant offers no reason to believe that Deputy Thornton knowingly or recklessly included false information in his search affidavit, much less that excision of the allegations of verification by CI #2 would eradicate probable cause for the search. Both are requirements for any motion to suppress to prevail on this theory. *See, e.g., United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001) (to suppress evidence seized pursuant to search warrant on theory that search affidavit was false, defendant "must carry his burden of proving (1) that the alleged misrepresentations or omissions were knowingly or recklessly made …, and (2) that the result of excluding the alleged misrepresentations … would have been a lack of probable cause for issuance of the warrants"). May has failed to carry either prong of this burden; therefore, suppression is not appropriate on a theory that Deputy Thornton misstated CI #2's contributions to the investigation in the search affidavit.

May also seeks suppression of evidence on the ground that the judge who issued the search warrant "could not have made a practicable common sense decision … that there was a probability that the cocaine found in the Defendant's residence would be located." (Doc. 21-1, at 1.) Of course, "[i]t is critical to a showing of probable cause that the affidavit state facts

sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation and internal quotation marks omitted); *see also United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."). The search affidavit submitted by Deputy Thornton plainly satisfied this requirement. Indeed, that affidavit provided specific, timely facts showing that CI #1 had observed May possessing approximately one ounce of cocaine in the last three days; that May had traveled to the search location immediately after being seen with that cocaine; that surveillance activities over the last few days appeared to show May participating in controlled substance transactions; that May had informed CI #1 he did not have the whole amount of cocaine but that he did have some; that May had been arrested earlier that evening and had been found to be in possession of controlled substances, paraphernalia, a firearm, and more than $1,000 in cash; and that May had been repeatedly observed in the last several days coming and going from the search location, whose address matched that on mail in May's possession. Based on these facts, the Court readily concludes that the search warrant affidavit set forth facts sufficient to justify a conclusion that evidence or contraband would probably be found at the premises to be searched, such that there was probable cause for issuance of the warrant. May's cursory argument to the contrary is meritless.

Defendant also contends that the search warrant was improperly issued because "[t]here was an insufficient demonstration that the informant … had sufficient veracity and basis of knowledge." (Doc. 21-1, at 1.) But CI #1 had provided specific, detailed descriptions of May's controlled substance distribution, based on his own eyewitness activities in circumstances where he was attempting to perform a controlled buy at officers' instructions. Furthermore, the search affidavit indicated that CI #1's information had been corroborated in critical respects by CI #2, and that CI #2 had previously supplied information to Deputy Thornton that had led to seizure of large quantities of controlled substances and currency in other cases. Further corroboration of CI #1's information was provided by the fact that, upon May's arrest earlier that evening, he had been found to be in possession of illegal drugs, a firearm, paraphernalia and a large amount of U.S. currency. Given all of these circumstances, which were explicitly set forth in the search affidavit, the Court readily finds that the "totality of the circumstances analysis that traditionally

has guided probable cause determinations" is satisfied here. *Brundidge*, 170 F.3d at 1353; *see generally United States v. Brown*, 2010 WL 841397, *3 (11th Cir. Mar. 12, 2010) (even where police did not independently corroborate informants' statements on which search warrant application was based, there was probable cause for warrant where statements corroborated each other and bore other indicia of reliability). Simply put, the information supplied by CI #1 and CI #2, taken in conjunction with the other evidence and circumstances documented in the search affidavit, plainly yielded probable cause to believe that illegal drugs and other contraband may be found at the search location.

Lastly, the Court considers defendant's argument that "the information provided by the affiant was insufficiently timely to establish probable cause to exist." (Doc. 21-1, at 2.) To support a finding of probable cause, "[t]he information in the affidavit must also be fresh." *Martin*, 297 F.3d at 1314. But the facts set forth in the search affidavit related to events that had occurred in the last 72 hours, including most notably the arrest of May with illegal drugs in his possession earlier that very evening and May's frequent comings and goings from the search location in the previous days. Under the circumstances, the information in the affidavit was not stale. To the contrary, the search affidavit set forth considerable fresh evidence tending to show a fair probability that illegal drugs and other items would be found at the search location.

Even if the various findings set forth above concerning the existence of probable cause were incorrect, the Court's conclusion that the Motion to Suppress should be denied would remain unchanged. Evidence obtained in that search would remain admissible pursuant to the good faith exception to the exclusionary rule, as described in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The mere issuance of a warrant activates the good faith exception in most cases. As the Eleventh Circuit has explained, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003) (citation omitted). An officer's good faith matters because, as a general proposition, the Fourth Amendment exclusionary rule does not bar evidence obtained by an officer acting in reasonable reliance on a search warrant issued by a magistrate, even if the warrant is later deemed by a reviewing court to lack probable cause. *See, e.g., United States v. McGough*, 412 F.3d 1232, 1239-40 (11th Cir. 2005) (when officers "act in good faith and in reliance on a search warrant

from a judge, the *Leon* good faith exception applies"). In a search performed pursuant to warrant, suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Martin*, 297 F.3d at 1313 (quotation marks and citation omitted). The facts before the Court establish that the officers acted in reasonable reliance upon the search warrant. Defendant has not argued, much less shown, that any exceptions to the good-faith doctrine apply. There is no indication of dishonesty or recklessness in the preparation of the affidavit, and no basis for finding that the officers could not have harbored an objectively reasonable belief in the existence of probable cause, given the abundant evidence they had marshaled to show that May was selling controlled substances and living at that address. Therefore, the Court expressly finds that even if probable cause for issuance of the search warrant were lacking, suppression of the evidence seized pursuant to that warrant would remain inappropriate under *Leon* good faith principles.

### III. Conclusion.

For all of the foregoing reasons, the Motion to Suppress (doc. 21) is **denied**.

DONE and ORDERED this 26th day of July, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE